

C. Mackey Salazar
1937 15th Street
San Francisco, CA 94114
415-297-8136
Plaintiff in Pro Se

# United States District Court
# Northern District of California

C. Mackey Salazar                )
                                 )
            Plaintiff            )   CASE NO.
                                 )
                                 )   **COMPLAINT FOR**
      v.                         )   **DECLARATORY,**
                                 )   **INJUCTIVE, OR**
                                 )   **OTHER RELIEF**
                                 )
Edmond G. Brown, Jr., in his     )
official capacity as Governor of )
California; Kamala Harris, in her)
official capacity as Attorney    )
General of California;           )
Jan Lynn Owen, in her official   )
capacity as California Corporations )
Commissioner; Edward Kelly Shinnick,)
in his official capacity as      )
Corporations Counsel for the     )
California Corporations          )
Commissioner's Enforcement Division )
                                 )
            **Defendant's**       )
_____)

## INTRODUCTION

1. Plaintiff has spent a lifetime looking for solutions that would assist individuals to break the cycle of poverty using methods and means that they can control and provide independence. Put another way, the problem with capitalism is that the poor were never let in on it. California Securities Laws present as presently interpreted and enforced present an unnecessary barrier to minorities, especially poor minorities. The administration is unfair, unconstitutional, and paternalistic and allow for participation by only the rich.

1

2.  A direct recognition that equity securities investments do involve grave risk is the reality; the fiction that they can be safe is fraudulent as clearly seen by the events of the last 150 years.  Insurance should be the investment vehicle to avoid risk.  With this clearly understood, the investment markets should be open to everyone.  Currently, the use of non-routine innovative business practices by minority entrepreneurs tend to result in their being unfairly and discriminatorily presumed by regulators as fraudulent.  This case puts the issues in clear focus.

## JURISDICTION AND VENUE

3.  This case raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all defendants have offices in this district and all Defendants reside in the State of California. Venue is also proper in this Court because a substantial part of the events giving rise to the claim occurred in this district.

## NATURE OF DISPUTE

5.  This action pursuant to 42 U.S.C. § 1983 seeks (1) a declaration that California Corporate Securities laws as administered in this and similar cases, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and (2) a preliminary and permanent injunction preventing Defendants from enforcing these provision against Plaintiffs.

6. These laws are being use to recast financial structures that do not contain a security into a security so that unfair and unconstitutional laws may be used to destroy them.

## THE PARTIES

7. Plaintiff C. Mackey Salazar is a California citizen and resides in the City and County of San Francisco, State of California.  Mr. Salazar is a former San Francisco Planning Commissioner, Chairman of the Board of a National Bank, and an activist for the right of poor people to work their way out of poverty by self-directed and independent entrepreneurial means.  This events described herein have resulted in great adversity emanating from places where it was least expected and has led to this filing of this case.

8. Defendant **Edmond G. Brown, Jr.,** is the Governor of California. In his official capacity, the Governor is the chief executive officer of the State of California. It is his responsibility to ensure that the laws of the State are properly enforced. The Governor maintains an office in San Francisco.

2

1  9. Defendant **Kamala Harris** is the Attorney General of the State of California. In her
2  official capacity, the Attorney General is the chief legal officer of the State of California.
3  It is his duty to see that the laws of the State are uniformly and adequately enforced.
4  The Attorney General maintains offices in San Francisco.
5
6  10. Defendant **Jan Lynn Owen** is the California Corporations Commissioner. It is her
7  responsibility to ensure that the California Corporate Securities laws are properly
8  enforced. The Department of Corporations maintains an office in San Francisco.
9
10  11. Defendant **Edward Kelly Shinnick** is Counsel for the Department of Corporation's
11  Enforcement Division. In his official capacity as Corporations Counsel for the
12  Enforcement Division is the official operating under color of law and to deny plaintiff
13  basic civil rights his unconstitutional, unlawful, and misguided interpretation, coupled
14  with its harmful effects on both the alleged victims and Plaintiff in his enforcement of
15  the California Securities Laws in this case.
16
17  12. Defendants, and those subject to their supervision, direction, and control, are
18  responsible for the proper enforcement of the Corporate Securities Laws. The relief
19  requested in this action is sought against each Defendant, as well as against each
20  Defendant's officers, employees, and agents, and against all.
21
22                                   **FACTS**

23  13. In the early 1980's, Plaintiff, C. Mackey Salazar was a member of the San
24  Francisco Planning Commission and earn the enmity of powerful interest through his
25  efforts to advance the aspirations of poor people. Among the most powerful was
26  McDonald's Corporation who had friends and influence in prosecutorial circles.
27
28  **The Prior Case**
29
30  14. Discussion of this is necessary to understand the important role it plays in the
31  present case.
32
33  15. When Mr. Salazar's efforts put in jeopardy a key piece of legislation, the Downtown
34  Plan, he resigned. This led to the first of several criminal investigations which generally
35  led nowhere. At the end of the first investigation, he was informed by a prosecutor
36  known for his integrity that not only were the accusations false, but he, Mr. Salazar, had
37  acted with the upmost integrity. Unfortunately, this prosecutor retired and less
38  honorable persons took his place and the persecutions continued.
39
40  16. When the tax laws were changed in 1985 eliminating many of the benefits to the
41  Real Estate Syndication Industry, Mr. Salazar, always creative, came up with a new way
42  of financing real estate activity. He put together limited partnerships composed solely of
43  pension plans which were tax exempt entities. He created an investment structure
44  whereby Retirement Plans would invest in limited partnerships. Because of the
45  unrelated business tax requirements, the only income they could receive without being

1  taxed was interest. He therefore structured the program paying 12% interest in the zero-
2  coupon format. The entire amount due at maturity would be paid in one payment of
3  double the amount invested at the end six years. This comes to a return of 12% per year
4  on interest. This was attractive to both sides at the time. Interests is payment for money
5  rented or loaned.
6
7  17. Unfortunately, because the investment was made in zero-coupon format with no
8  payments for 6 years, prosecutors took that as proof that there was no intention of ever
9  paying it back and then proceeded a three-year persecution under the guise of an
10 investigation which resulted the in the filing of 110 felony counts alleging violations of
11 the securities laws filed just prior to the running Statute of Limitations.
12
13 18. Deep into the case, a motion was made by Mr. Salazar to dismiss the securities
14 counts on the basis that no security had been issued and that the transaction was exempt
15 under Section 15102 (e) of the Corporations Code. It was debt not equity. The District
16 Attorney's Office was forced to admit in open court to the Presiding Judge over a year
17 into the case that they were not ready to go to trial. Attempts were then made to settle
18 the case. Mr. Salazar refused to plead guilty to any count involving dishonesty.
19
20 19. However when it was suggested that Mr. Salazar plead guilty to two counts of
21 failure to make the full disclosure, two consideration clarified his thinking.
22
23 20. First he questioned the strict liability nature of the security laws whereby a good
24 faith attempt was not sufficient. If full disclosure was not achieved for whatever reason,
25 a crime had been committed regardless of good faith attempts. Mr. Salazar considered
26 this unconstitutional, but it was definitely the law at the time.
27
28 21. Secondly, his experience has shown him that the criminal law system as practiced in
29 California was dysfunctional. Conflicts of interest compromise the actions each party.

30 22. Prosecutors. Conflicts of Interest on the part of the prosecutors who were both the
31 accuser and the custodian of the evidence put them in a position where they could alter,
32 suppress, and manufacture evidence at will with no concern for being held personally
33 accountable. Although cases of prosecutorial misconduct are abundant, Mr. Salazar
34 could find no case of a prosecutor being charged criminally for misconduct. The
35 incentives are to overreach rather than the interest of fairness and justice as he was
36 taught in law school.

37 23. Defense Counsel. Standard operating procedure for the defense bar is to ascertain
38 how much money a defendant can come up, scare the defendant and the family into
39 coming with as much as they possibly can, then coercing and seducing the defendant
40 into a plea bargain so that the defense counsel does not have to try the case. Once the
41 defendant has paid all the money the family can raise, then it is most economical and
42 efficient for the attorney to get rid of the case with a plea bargain. Mr. Salazar has never
43 seen an attorney return the money because they did not have to try the case. Few

4

1  defendants have the money to pay an effective and fair defense, so the attorney's interest
2  is get the money and make a plea deal. This might have some merit if the system is fair,
3  but it is not. Rather than providing a legal defense for the defendant, defense attorneys
4  see their role as managing an inadequately financed client's efforts to make the best deal
5  possible under the circumstance which have befallen him.
6

7  24. The Court. The Bench which in theory insures the fair administration of justice in
8  accordance with law has been confronted with a situation where the Court must
9  administrate and manage a debilitating case overload where it is impossible to try every
10  case and settlements must be successfully negotiated for over 90% of the cases brought
11  before it or the system will collapse. This the Judges cannot permit and consequently,
12  all other considerations pale before the need to coerce and seduce defendants into a plea
13  bargains. This is made easier by assuming that that the defense counsels and
14  prosecutors operate legally and ethically and that the representation of these members of
15  the bar are, for the most part, free of debilitating conflicts of interest that would prevent
16  them, for the most part, from breaking the law or acting unethically. Unfortunately, the
17  reality is just the opposite.
18

19  25. This has resulted in a fundamentally unfair system which has made the United
20  States the leader in incarcerating its citizens. The incentives are to accuse and prosper
21  with the fuel of false confessions.

22  26. Mr. Salazar determined that he in fact was guilty of breaking an unconstitutional
23  law. His offence was that he did not disclose to his investors that, though innocent of
24  wrong doing, he or any other entrepreneur could be subjected to a prosecution which
25  could destroy the viability of the investment program. Any investment program
26  survives at the will of the prosecutors who may be influenced by powerful economic or
27  political interest. Mr. Salazar determined that this is a risk that should be disclosed to all
28  investors in equity securities and any offering circular that does not contain it is
29  fraudulent. This was failure to disclose he agreed he could plead to on the condition that
30  he be given a chance to redeem his actions. His attorney told him that there was in
31  informal agreement that if he repaid all the funds, that the conviction would be
32  expunged.
33

34  27. Mr. Salazar proceeded, with great difficulty because he was now a felon, to repay
35  the $500,000 taken in as part of the program, but he was not able during the
36  probationary period able to repay a separate $300,000 loan that also had not been due
37  when the charges were made. Despite his adversity, Mr. Salazar believe the time will
38  come when he will settle this account also.
39

40  **The Present Case.**
41

5

1  28. Mr. Salazar again determined a method to work around the strict liability unfairness
2  of the Securities Laws in California. He reasoned and structured as follows:
3
4  29. A general partnership is an active rather than a passive investment. It requires
5  participation in the management of the business. Vicarious liability, however, makes
6  this form business too risky. However, with the advent of Limited Liability Companies,
7  a group may operate as a general partnership without vicarious liability. Mr. Salazar
8  decided to structure a program around three complimentary elements.
9
10  30. First do real estate deals with less than 10 participants so that the Department of
11  Real Estate rather the Department of Corporations would have jurisdiction over them.
12
13  31. Furthermore, so long as each group had a separate parcel with different investors,
14  they could not, under real estate law, be integrated into one scheme of investment
15  because their viability depended upon a different asset. They were different
16  investments.
17
18  32. They would eventually operate as general partnership LLCs requiring active
19  participation in management. The investment equity risk would be eliminated by
20  structuring the first money in as a loan until the enterprise was viable. When viable, the
21  investor would have the option to continue or withdraw. If the enterprise failed to
22  become a going concern, the loan would be repaid. Loans are exempt from the
23  securities laws in California.
24
25  33. The Department of Corporation now claims that these structures are a securities
26  transaction and is bring enforcement actions against the defendants. Their actions have
27  made it impossible to repay the loans and stand as a barrier to repayment. They are
28  using a the prior conviction based on an unconstitutional law as presumptive prove of
29  culpability, dishonesty, and fraud.
30
31  **CLAIMS FOR RELIEF**

32  **CLAIM ONE: DUE PROCESS**

33  34.  Plaintiffs incorporate here by reference paragraphs 1 through 33, supra, as if
34  fully set forth herein.
35
36  35.  California Corporate Securities laws as applied in this case violates fundamental
37  liberties that are protected by the Due Process Clause, both on its face and as applied to
38  Plaintiff.
39

40  **CLAIM TWO: EQUAL PROTECTION**

41  36. Plaintiffs incorporate here by reference paragraphs 1 through 35, supra, as if fully
42  set forth herein.
43

37.    California Corporate Securities laws as applied violates the Equal Protection
Clause of the Fourteenth Amendment, both on its face and as applied to Plaintiffs.

38.    California Corporate Securities laws as applied in this case discriminate against
the power and favor the rich. They bar the poor from participation in investment
schemes and discriminate against minority and not yet wealthy entrepreneurs.

39.    California Corporate Securities laws as applied in this case violates the Equal
Protection Clause because it discriminates on the basis of race and economic
circumstance.

## CLAIM THREE: VIOLATION OF 42 U.S. C. SECTION 1983

40.    Plaintiffs incorporate here by reference paragraphs 1 through 39, supra, as if
fully set forth herein.

41.    Insofar as they are enforcing the California Corporate Securities laws as applied
in this case, Defendants, acting under color of state law, are depriving and will continue
to deprive Plaintiffs of numerous rights secured by the Fourteenth Amendment to the
United States Constitution in violation of 42 U.S.C. § 1983.

## IRREPARABLE INJURY

42.    Plaintiffs incorporate here by reference paragraphs 1 through 41, supra, as if
fully set forth herein.

43.    Plaintiffs are now severely and irreparably injured by California Corporate
Securities laws as applied in this case — a state laws that violates the Due Process and
Equal Protection Clauses of the Fourteenth Amendment. By way of example only,
Plaintiffs' injury as a result includes the infliction of extreme adversity in attempt to
establish methods and procedures for working out of the cycle of poverty and to repay
its loans, the deprivation of rights guaranteed by the Fourteenth Amendment and the
severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma
caused by poor and chastised for looking for innovative ways to escape. Plaintiffs'
injuries will be redressed only if this Court declares the actions by the Commissioner of
Corporations unconstitutional and enjoins Defendant from enforcing it.

44.    An actual and judicially cognizable controversy exists between Plaintiffs and
Defendants regarding California Corporate Securities laws as applied in this case.
Whether they violates the Due Process and Equal Protection Clauses of the Fourteenth
Amendment. Defendants are presently enforcing this state law to the detriment of
Plaintiffs.

1   **PRAYER FOR RELIEF**

2   **WHEREFORE, Plaintiffs pray for judgment as follows:**

3       1.   **Plaintiff respectfully request that this Court, Pursuant to 28 U.S. C. Section**
4           **2201, construe the purported lawful authority permitting the California**
5           **Corporations Commissioner to pursue the actions commenced in this case**
6           **and enter a declaratory judgment stating that this law and any other**
7           **California law that prohibit poor and/or persons wrongfully convicted of a**
8           **crime from borrowing money and engaging in business as a General**
9           **Partnership or that restrict poor people from investing in financial**
10          **enterprises solely because of their financial situation violate the Due Process**
11          **and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C.**
12          **Section 1983.**

13      2.   **Plaintiff respectfully request that this Court enter a preliminary and a**
14          **permanent injunction enjoining enforcement by the California**
15          **Corporations Commissioner of laws referred to herein by means that are**
16          **unconstitutional and that increase the barriers and the burdens on poor**
17          **people to fight their way out of poverty using their own entrepreneurial**
18          **efforts and talent.**

19      3.   **Plaintiff respectfully request cost of suit, including reasonable attorney's**
20          **fees under 42 U.S.C. Section 1988, and all further relief to which they may**
21          **be justly entitled.**

22

23  **Dated: April 16, 2013**

24

25  **Respectfully Submitted,**

26
27
28
29
30  **C. Mackey Salazar, Plaintiff in Pro Se**
31

8